# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN E. RILEY,<br>CDC # 60512<br><br>                Plaintiff,<br>vs.<br><br>S KERNAN, et al.<br><br>                Defendants. | Case No.: 3:16-cv-00405-MMA-JMA<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>[Doc. Nos. 37, 51] |

Plaintiff Steven E. Riley, a state prisoner proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 after receiving leave to amend his original complaint. Plaintiff now claims the Secretary of the California Department of Corrections and Rehabilitation ("CDCR") and eighteen prison officials violated his constitutional rights by stealing his personal effects, subjecting him to random drug testing, charging him with repeated, falsified disciplinary violations, losing his medical records, and placing his name on a list of inmates required to participate in Alcoholics Anonymous/Narcotics Anonymous programs, based on his failure to provide a urine sample. Defendants move to dismiss Plaintiff's First Amended Complaint ("FAC") pursuant to Federal Rule of

Civil Procedure 12(b)(6).  *See* Doc. Nos. 37, 51.  Plaintiff opposes both motions.  *See* Doc. Nos. 48, 52.  For the reasons set forth below, the Court **GRANTS** Defendants' motions to dismiss.

### BACKGROUND[1]

This matter arises from events beginning in October 2014 at Calipatria State Prison, the details of which are set forth in detail in the Court's previous order of dismissal.  In sum, Plaintiff refused to provide prison officials with a urine sample on numerous occasions, leading to the issuance of repeated Rules Violation Reports ("RVRs").  On February 1, 2016, Plaintiff filed his original complaint claiming that the prison's random drug testing policy ("the policy"), and its requirement that inmates provide urine samples when selected for testing, violate his right to be free from unreasonable searches.  Plaintiff alleged that inmates are not informed of the test results, and are not given sufficient information to challenge the findings of the laboratory that performs the testing.

Plaintiff further alleged that the policy "as applied has no exception for religious observance."  *See* Doc. No. 1 at 3.  Plaintiff claimed that based on his refusal to comply with the policy, he was placed on a mandatory urine testing list and prison officials had retaliated against him by issuing falsified RVRs.  Plaintiff alleged that prison officials unlawfully screened out his inmate appeals from the RVRs.  As a result of the rules violations, Plaintiff stated that prison officials placed his name on a list of inmates required to participate in Alcoholics Anonymous/Narcotics Anonymous ("AA/NA") programs, in violation of his right to freedom of religion.  Plaintiff also alleged that the Warden, the Deputy Warden, and three Associate Wardens at Calipatria failed to investigate the submission of falsified and inaccurate RVRs by correctional officers

---

[1] This description of the facts derives from Plaintiff's First Amended Complaint, and the Court must construe all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

2

under their supervision. Based on those allegations, Plaintiff brought multiple claims against fifteen defendants, including the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"). On October 24, 2016, Plaintiff also moved for a preliminary injunction enjoining the issuance of further RVRs. *See* Doc. No. 33.

On February 2, 2017, the Court denied Plaintiff's motion for preliminary injunction and granted Defendants' motion to dismiss, giving Plaintiff "leave to file an amended complaint in order to cure [its] deficiencies." *See* Doc. No. 35. On March 16, 2017, Plaintiff filed his FAC raising new allegations and naming four new defendants. Based on the new allegations from the FAC and the original allegations, Plaintiff claims Defendants violated his rights to freedom of religion, redress, freedom from unreasonable searches, equal protection, due process, freedom from cruel and unusual punishment, and freedom from double jeopardy. *See* Doc. No. 36. All Defendants move to dismiss Plaintiff's claims under Rules 12(b)(6) and 8(a) of the Federal Rules of Civil Procedure.

## LEGAL STANDARD

### 1. Rule 12(b)(6) – Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard thus demands more than a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

In reviewing a motion to dismiss under Rule 12(b)(6), courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them, and must construe the complaint in the light most favorable to the plaintiff. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004), *citing Karam v. City*

3

3:16-cv-00405-MMA-JMA

*of Burbank*, 352 F.3d 1188, 1192 (9th Cir. 2003).  The court need not take legal conclusions as true merely because they are cast in the form of factual allegations. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where a plaintiff appears *pro se* in a civil rights case, the court must construe the pleadings liberally and afford the plaintiff any benefit of the doubt.  *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988).  The rule of liberal construction is "particularly important in civil rights cases."  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).  Although pro se litigants are held to less stringent standards than represented parties, *Jackson v. Carey*, 353 F.3d 750, 757 (9th Cir. 2003), they must still comply with the procedural or substantive rules of the court.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir 1987), overruled on other grounds by *Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012).  Requiring prisoners proceeding *pro se* to adhere to the rules regarding joinder of parties and claims prevents "the sort of morass [a multiple claim, multiple defendant] suit produce[s]."  *George*, 507 F.3d at 607.

### 2. Rule 15(a) – Amendments Before Trial

Pursuant to Federal Rule of Civil Procedure 15(a), the court "should freely give leave" to amend before trial "when justice so requires."  However, leave to amend "is not to be granted automatically," *Jackson v. Bank of Haw.*, 902 F2d 1385, 1387 (9th Cir. 1990), and "[i]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  In the context of a prisoner's suit in federal court, proposed amendments to the complaint must also be viewed in light of the restrictions imposed by 28 U.S.C. § 1915 as amended by the Prison Litigation Reform Act ("PLRA") in 1996.  In a "conflict between Federal Rule of Civil Procedure 15 and the PLRA, the rule would have to yield to the later-enacted statute to the extent of the conflict." *Harris v. Garner*, 216 F.3d 970, 982 (11th Cir. 2000).

When considering a prisoner's proposed amended complaint, the court must consider the restrictions on prisoner suits imposed by the PLRA, including review and summary disposition of any claim or action that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks relief against persons immune from such relief. *See* 28 USC § 1915(e)(2)(B). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").

## DISCUSSION

**A. Scope of Plaintiff's Leave to Amend**

i. <u>New, Unrelated Allegations</u>

Plaintiff includes multiple new allegations in the FAC that are unrelated to the claims set forth in his original complaint. The articulable,[2] new allegations are listed as follows:

1. Plaintiff alleges that Officer Macias and Lt. Prado (both unnamed in Plaintiff's original complaint) violated Plaintiff's constitutional rights by stealing Plaintiff's prayer oil after Plaintiff was given an RVR for purchasing the oil from an unapproved vendor. *See* Doc. No. 36 at 3-4, 10-11, 16, 23, 35, 42.

2. Plaintiff cites to California Health and Safety Code § 11553 in suggesting that he would not be subject to testing if selection were computer generated because he had previously participated in a marijuana diversion program that would prevent his name from appearing. California Health and Safety Code § 11553 does not require removal of

---

[2] The Court notes that Plaintiff's allegations are construed liberally when possible. However, much of Plaintiff's FAC is garbled and difficult to decipher.

inmate's names from pools for computer selected drug tests.  *See* Doc. No. 35 at 4-5, 10, 13, 17, 20-21.

3. Plaintiff complains that funds of state-sponsored fundraisers are put to use for the children of Imperial Country when they should benefit inmates instead.  *See id.* at 3-4, 13, 16.

4. Plaintiff argues that his rights were violated on May 16, 2016 because he believes his medical records were not protected after being notified that they had gone missing.  *See id.* at 4.

5. Plaintiff alleges that because inmate urine samples are labeled "donor" when sent out for testing, his "DNA" might be donated for consumption by the greater public.  *See id.* at 5-6.  Plaintiff claims that that the policy violates a protected liberty because he has a right not to donate his urine based off of an ownership of his "genetic marker(s)." *Id.*

6. Plaintiff alleges that he is kept in prison because the policy infringes his ability to afford representation at his parole hearings. Plaintiff also argues the prison is corrupt.  *See id.* at 7.

7. Plaintiff alleges that the grooming standards at CDCR were previously held illegal, but, because the RVRs he received under the prior grooming standard have not been removed from his file, the illegal grooming standard is still used against him. *See id.*

8. Plaintiff alleges new complaints about the efficacy of the appellate procedure for grievances filed against the prison. *See id.* at 8.

9. Plaintiff alleges that he rescinded the prison's power of attorney on November 28, 1995, and therefore wants to close the trust account that he alleges the prison has maintained for him.  *See id.* at 9.

10. Plaintiff contests an RVR filed against him by Officer Barrios for failure to take a survey two days after his parole hearing.  *See id.* at 15.

11. Plaintiff alleges that on December 28, 2016, "Defendant" Cowey (unnamed in Plaintiff's original complaint) violated Plaintiff's constitutional rights by holding a single hearing for three separate RVRs concurrently.  *See id.* at 32.

1    12. Plaintiff alleges that Officer Grima (unnamed in Plaintiff's original complaint) violated Plaintiff's constitutional rights by authoring two RVRs for the same offense on the same day. *See id.* at 41.

### ii. Dismissal of New Allegations

#### a. Misjoinder of Claims and Parties

The Court granted Plaintiff leave to amend his original complaint in consideration of the Ninth Circuit's liberal amendment policy, particularly for civil rights cases where the prisoner proceeds *pro se*. However, the Court specifically concluded that amendment was for the purpose of "cur[ing] the deficiencies set forth [in the Court's Order] with respect to his claims." *See* Doc. No. 35 at 11. Moreover, the Court noted that "[d]efendants not individually named and all claims not re-alleged in the First Amended Complaint will be considered waived." *See id.* at 12; *King v. Atiyeh*, 814 F.3d 565, 567 (9th Cir. 1987).

To bring claims against different defendants in the same lawsuit, a plaintiff must satisfy Federal Rule of Civil Procedure 20, which governs joinder of parties. Permissive joinder of multiple defendants in a single lawsuit is allowed only if: (1) a right to relief is asserted against each defendant that relates to or arises out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties arises in the action. Fed. R. Civ. P. 20(a)(2). Unrelated claims involving different defendants must be brought in separate actions. *See George v. Smith*, 507 F.3d 605, 607 (9th Cir. 2007) ("[u]nrelated claims against different defendants belong in different suits"); *Zhu v. Countrywide Realty Co., Inc.*, 160 F. Supp. 2d 1210, 1225 (D. Kan. 2001) (the "Federal Rules do not contemplate joinder of different actions against different parties which present entirely different factual and legal issues."). When there is a misjoinder of parties, the court may on its own initiative at any stage of the litigation drop any party. Fed. R. Civ. P. 21.

While the additional parties in Plaintiff's FAC may have been employed at Calipatria State Prison during the relevant time period, the claims against them are

wholly unrelated to Plaintiff's original claims. Because the additional defendants are not implicated in Plaintiff's original complaints, Plaintiff's right to relief against each additional party does not relate to or "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." *See* Fed. R. Civ. P. 20(a)(1)(A); *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997).

Moreover, because Plaintiff's FAC improperly adds new parties, Plaintiff's new allegations against the additional parties or Defendants may not be joined pursuant to Rule 18(a). *See Thompson v. Kernan*, No. 1:07-CV-00572-AWI, 2012 WL 2912108, at *1 (E.D. Cal. July 16, 2012), *aff'd sub nom. by Thompson v. Alvarez*, 586 F. App'x 390 (9th Cir. 2014) (finding that, in a prisoner's amended complaint, only if new defendants are properly joined under Rule 20(a) will the Court review other claims to determine if they may be joined under Rule 18(a)). As such, Plaintiff's new claims are subject to dismissal. If Plaintiff desires to bring unrelated claims against additional defendants, he is required to bring them in a separate action. *See George v. Smith*, 507 F.3d 605, 607 (9th Cir. 2007).

### b. Non-Compliance with Federal Pleading Standard

Additionally, Plaintiff's new allegations in his FAC fail under the pleading standards set forth in Federal Rule of Civil Procedure 8(a), as Plaintiff fails to allege short and plain statements upon which relief can be granted. Under Rule 8(a), "[a] pleading that states a claim for relief must contain: (1) a short and plain statement of the grounds for the court's jurisdiction . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for the relief sought." *See* Fed. R. Civ. P. 8(a).

Plaintiff's FAC is forty-two pages of dense handwritten text, attempting to bring suit against approximately nineteen defendants for unrelated incidents in violation of a lengthy list of various federal and state codes, statutes, and regulations including the U.S. Constitution, Federal Administrative Procedures Act, and the California Penal Code. Instead of setting forth specific factual allegations to support his claims, Plaintiff's FAC

adds new allegations unrelated to his original claims, and does so in a disjointed and confusing manner. In sum, in addition to being improperly joined under Rule 18, Plaintiff's new allegations fail pursuant to Rule 8(a).

### B. Attempt to Cure Defects of Original Claims

Plaintiff's original claims fell into three general categories: (1) constitutional violations from the policy, (2) constitutional violations from the issuance of the RVRs, and (3) constitutional violations based on the inmate appeals process. The additional allegations in Plaintiff's FAC do not address his original claims of constitutional violations based on the inmate appeals process.[3] Plaintiff makes three additional, articulable allegations in attempting to correct the defects of his original claims regarding the policy and the issuance of RVRs:

**1.** Plaintiff's FAC depicts the manner and setting of the mandatory urine tests instilled by the policy. By requiring inmates strip together in a gym rather than medical facility when providing urine samples, Plaintiff alleges the prison officials violated his rights under the Fourth Amendment's protection against unreasonable search and seizure and the Eighth Amendment's protection against cruel and unusual punishment. *See* Doc. No. 36 at 5-6, 24, 28.

---

[3] Plaintiff fails to adequately amend his original complaint that the policy violated his rights under the Free Exercise and Establishment Clauses of the First Amendment. Under the Free Exercise Clause, the Court originally found that Plaintiff failed to allege sufficient facts to show he possessed a sincerely-held religious belief or that the policy placed a "substantial burden" on any such belief in an unreasonable manner where the official's actions are not "rationally related to legitimate penological interests." *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-50 (1987); *see also Jones v. Williams*, 791 F.3d at 1031-33 (a "substantial burden" must be "more than an inconvenience on religious exercise"). Under the Establishment Clause, Plaintiff alleged that the religious focus of the AA/NA program in which the policy placed him in violates the separation between church and state. The Court originally found that Plaintiff failed to allege that he had a sincerely held religious belief, that the policy burdened that belief, or that Defendants forced Plaintiff to participate in the AA/NA program. Plaintiff only further complains that the policy does not provide exceptions based on religious observations, which the Court specifically noted in its previous Order is simply not true. As listed above, none of the additional facts listed in Plaintiff's FAC further allege a violation of his First Amendment rights.

While prisoners retain some of their constitutional protections during confinement in prison, "limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." See *O'Lone* 482 U.S. at 107; *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Random mandatory drug testing, and non-random testing that is not intended to harass an inmate, are reasonable under the Fourth Amendment. *Thompson v. Souza,* 111 F.3d 694, 702 (9th Cir. 1997). The *Thompson* court found that the scope, manner, justification, and place of the tests delineate whether they are reasonable under the Fourth Amendment. *Id.*

Plaintiff alleges that inmates provide urine samples together while nude in a gym. Plaintiff also suggests urine testing should occur in a medical facility after random selection of inmates by a computer. While prisoners retain a limited right to bodily privacy, their right can yields to a prison's security needs. *See Michenfelder v. Sumner*, 860 F.2d 328, 334 (9th Cir. 1988). By requiring the tests be administered in groups while nude, the prison officials protect their penological interests in safety, security, and ensuring that each inmate submits their own urine tests without intrusion or opportunity to tamper with their urine. The Court must accord great deference to prison officials' assessments of their interests. S*ee Turner v. Safley,* 482 U.S. 78, 83-84 (1987). In any event, Plaintiff does not allege any facts regarding the scope and justification of the searches. Thus, Plaintiff fails to state a plausible claim that the prison's administration of their drug testing policy violates his Fourth Amendment rights.

Plaintiff fails to allege sufficient facts to show that the policy violated his right to be free from cruel and unusual punishment. The Eighth Amendment provides the remedy to inmate's for "calculated harassment unrelated to prison needs." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984). A prison official does not violate the Eighth Amendment "unless the official knows of and disregards an excessive risk to inmate health or safety." *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). While Plaintiff's FAC delineates the manner and setting of the urine tests, it does not further allege that the policy imposed

10

3:16-cv-00405-MMA-JMA

any risk of physical or mental harm to him. Moreover, as stated, drug testing is considered reasonably related to the legitimate penological interest in keeping prisons drug-free to maintain safety and rehabilitation. *Thompson*, 111 F.3d at 702. Plaintiff's FAC fails to allege facts showing how the administration of the policy causes harassment in a manner "unrelated to prison needs." *Hudson*, 468 U.S. at 530. Thus, Plaintiff's claim that the policy violates his Eight Amendment rights fails.

2. Plaintiff claims that he has lost his opportunity for early release and parole because of the RVRs; thus, Plaintiff believes the RVRs imposed a significant burden. *See id.* at 13, 20- 22.

Plaintiff's claim that the RVRs have undermined his chances of receiving parole fails to rise to the level of a Due Process violation. The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez,* 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87).

Plaintiff's FAC adds the potential loss of parole to the original allegations that the RVRs resulted in loss of earned credit, wage, visitation, and phone privileges. Thus, Plaintiff argues that the potential loss of his parole imposes a "significant" or "atypical" hardship. However, this allegation provides no additional "factual content that allows the court to draw the reasonable inference" that any of the Defendants' actions "presented a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," or

caused him to suffer an "atypical" or "significant hardship." *Iqbal*, 556 U.S. at 678; *Sandin*, 515 U.S. at 584-85; *see Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). Moreover, the potential of a negative parole decision does not trigger a substantial burden protected by an inmate's Due Process rights. *See Sandin*, 515 U.S. at 487 (stating that because prisoners are given procedural protections in the form of time to explain the circumstances behind their misconduct at their parole hearing, "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause.").

Thus, Plaintiff's allegation that the RVRs have potentially undermined his eventual chance at parole falls short of stating a due process claim. *See Burnsworth v. Gunderson*, 179 F.3d 771, 774 n.3 (9th Cir. 1999) (stating that "the possibility of denial of parole at some later date does not amount to the denial of a liberty interest."). And because Plaintiff fails to allege a protected liberty interest or "sufficiently significant hardship," the Court need not "determine whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez,* 334 F.3d at 860.

**3.** In his opposition brief, Plaintiff argues that Defendants illegally "stacked" his RVRs in retaliation to Plaintiff's refusal to submit to drug testing. *See* Doc. No. 48 at 4-5.

While Plaintiff claims the stacking as a violation of his Fourteenth and Eighth Amendment rights, this claim arises under the Fifth Amendment's Double Jeopardy Clause. The Double Jeopardy Clause "protects against multiple punishments for the same offense." *United States v. DiFrancesco*, 449 U.S. 117, 129 (1980) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). Double jeopardy concerns are not implicated in this case because each RVR issued against Plaintiff resulted from a distinct refusal to comply with the policy. While stacking Plaintiff's punishments may overlap his refusals to comply with the policy, the protections afforded by the Double Jeopardy Clause only apply in criminal proceedings. *See Breed v. Jones*, 421 U.S. 519, 528 (1975); *see also United States v. Brown*, 59 F.3d 102, 105 (9th Cir. 1995) (holding that

the Double Jeopardy Clause does not apply to a prison's administrative determination that disruptive conduct requires transfer to a higher security facility). Accordingly, Plaintiff cannot state a plausible Fifth Amendment claim based on the stacking of punishments from multiple RVRs for violating prison regulations on multiple different occasions.

In sum, Plaintiff's additional allegations do not cure the deficiencies of his original claims, and those claims are once again subject to dismissal under Rule 12(b)(6).

### C. Qualified Immunity

Defendants contend qualified immunity entitles them to protection from liability in this action. Government officials receive qualified immunity from civil damages unless their conduct violates "'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because the Court finds that Plaintiff's allegations do not make out a plausible claim of a statutory or constitutional violation, "there is no necessity for further inquiries concerning qualified immunity" at this time. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

### D. Leave to Amend

Finally, the Court must consider whether to afford Plaintiff another opportunity to amend his claims. Generally, "[t]he court should give leave [to amend] freely when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Court previously identified the specific defects of Plaintiff's claims. Nevertheless, he has failed to allege sufficient additional facts to correct those deficiencies. Moreover, Plaintiff's new claims are unrelated to his original claims and not properly joined in this suit. The Court finds that amendment under the circumstances would be futile, and therefore unwarranted. *See Vasquez v. Los Angeles County*, 487 F.3d 1246, 1258 (9th Cir. 2007) (citing *Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing "[f]utility of amendment" as a proper basis for dismissal without leave to amend)). As such, Plaintiff's claims are subject to dismissal without leave to amend.

## Conclusion

Based on the foregoing, the Court **GRANTS** Defendants' motions to dismiss and **DISMISSES** Plaintiff's First Amended Complaint without leave to amend. The Clerk of Court is instructed to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: August 10, 2017

*/s/ Michael M. Anello*
HON. MICHAEL M. ANELLO
United States District Judge