UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN E. RILEY,<br><br>                       Plaintiff,<br><br>v.<br><br>S. KERNAN, et al.,<br><br>                     Defendants. | Case No.: 16cv405-MMA-LL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[ECF No. 90]** |

Currently before the Court is a Joint Motion for Determination of a Discovery Dispute ("Joint Motion") in which Plaintiff seeks to compel interrogatory responses and document subpoenas. ECF No. 90. Specifically, Plaintiff seeks to compel further responses to Interrogatory Nos. 1 to 18 propounded to Defendant Kernan. ECF No. 90 at 5–8, see also ECF No. 90-1 (Plaintiff's Interrogatories, attached as Exhibit 1 to the Joint Motion). Plaintiff also seeks to compel responses to ten subpoenas, nine of which were served on Defendant Kernan and one to Norah O'Donnell. ECF No. 90 at 4, 8; see also ECF No. 90-2 (Plaintiff's Subpoenas, attached as Exhibit 2 to the Joint Motion). For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion to Compel.

/ / /

/ / /

1

## RELEVANT PROCEDURAL HISTORY

On March 16, 2017, Plaintiff filed a first amended complaint ("FAC") alleging Defendants violated his rights to freedom of religion, redress, freedom from unreasonable searches, equal protection, due process, freedom from cruel and unusual punishment, and freedom from double jeopardy. See ECF No. 36. This matter arises out of events beginning in 2014 at Calipatria State Prison. See id. Plaintiff claims that he refused to comply with drug tests by urinalysis because of the prison's "illegal" procedures and was subsequently issued Rules Violation Reports ("RVRs") and retaliated against. See id. On August 10, 2017, the Court granted Defendants' motions to dismiss the FAC. ECF No. 53.

Plaintiff appealed and on July 7, 2020, the United States Court of Appeals for the Ninth Circuit affirmed in part and reversed in part the district judge's order. ECF No. 64. The Ninth Circuit remanded the following claims: (1) Plaintiff's claim that the prison's urinalysis procedures interfered with his religious belief against giving away his bodily fluids or DNA under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.*, and (2) Plaintiff's First Amendment retaliation claim in which he alleged that he was "bullied and harassed for invoking his rights" and that his administrative grievances were screened out "for nefarious reasons" and to chill his "right of redress." ECF No. 64 at 6–7; see also ECF No. 63.

On August 19, 2020, Defendants filed their answer. ECF No. 65. On August 21, 2020, the Court issued a Scheduling Order regulating discovery and other pretrial proceedings. ECF No. 68.

On January 5, 2021, Plaintiff served a request for a hearing date for a motion to compel, which was filed on January 13, 2021. ECF No. 81. The Court denied Plaintiff's request for a hearing date for a motion to compel and ordered the parties to meet and confer regarding Plaintiff's discovery issue on or before January 29, 2021. ECF No. 82. The Court further ordered that if the parties were unable to resolve their dispute, they should file a Joint Motion for Determination of Discovery setting forth, among other things, the

discovery sought that is in dispute and argument(s) in support of the parties' respective positions. Id. at 2–3. On February 5, 2021, the parties filed the instant Joint Motion for the Court's resolution. ECF No. 90.

## **LEGAL STANDARD**

The Federal Rules of Civil Procedure defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").[1]

An interrogatory may relate to any matter that may be inquired under Rule 26(b). Fed. R. Civ. P. 33(a)(2). "The grounds for objecting to an interrogatory must be stated with specificity, [and] [a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."

---

[1] The term "Rule" in this Order refers to the Federal Rules of Civil Procedure, unless otherwise specified.

3

Fed. R. Civ. P. 33(b)(3). Responses to interrogatories must be verified. Fed. R. Civ. P. 33(b)(5) ("The person who makes the answers must sign them, and the attorney who objects must sign any objections.").

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirement of Rule 26(b)(1)." Bryant v. Ochoa, 2009 U.S. Dist. LEXIS 42339, at *3 (S.D. Cal. May 14, 2009) (citations omitted). Thereafter, "the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Id. (citations omitted).

## ANALYSIS

**A.     Interrogatory Nos. 1 to 5**

Plaintiff's Interrogatory Nos. 1 to 5 generally ask for financial information regarding urine testing for different periods of time. Specifically:

- Interrogatory No. 1 asks: "How much money was allocated for urine testing in the fiscal year 2014?"
- Interrogatory No. 2 asks: "How much money was allocated for urine testing in the fiscal year 2015?"
- Interrogatory No. 3 asks: "How much money was allocated for urine testing in the fiscal year 2016?"
- Interrogatory No. 4 asks: "How much money was allocated for urine testing in the fiscal year 2017?"
- Interrogatory No. 5 asks: "How much money was allocated for urine testing in the fiscal year 2018?"

ECF No. 90-1 at 3–4 (Plaintiff's Interrogatories, attached as Exhibit 1 to the Motion).

For each of Plaintiff's Interrogatory Nos. 1 to 5, Defendants identically objected as follows:

> Objection. Vague and ambiguous. Not relevant to any claim or defense, not proportional to the claims, and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Overbroad. Burdensome, oppressive, and harassing. Argumentative. Lacks foundation.

ECF No. 90-1 at 38–39 (Defendants' Responses to Plaintiff's Interrogatories, attached as Exhibit 3 to the Motion).

Plaintiff argues in support of his Motion to Compel Interrogatory Nos. 1 to 5 that Federal Rule of Civil Procedure 26 "allows for these question(s) to be asked and answered" and that "this case deal[s] with urine testing." ECF No. 90 at 5. Defendants argue that the Motion to Compel Interrogatory Nos. 1 to 5 should be denied because (1) "the amount of money allocated for urine testing has nothing to do with whether the prison's urinalysis procedures interfered with Plaintiff's religious belief against giving away his bodily fluids since his beliefs do not relate to the amount of money allocated to urine testing, and Plaintiff refused to provide any urine sample at all"; (2) the amount of money allocated for urine testing "has nothing to do with retaliation"; (3) "this discovery is also not proportional to the claims and to the needs of the case since it is not important to resolving these issues"; (4) they are overbroad in that they do not "limit the information sought to the prison where Plaintiff was incarcerated at the time of the incidents"; (5) "this discovery is argumentative and lacks foundation because it assumes that the cost of urine testing has any relation to Plaintiff's religious belief against giving away his bodily fluids or the alleged retaliation;" and (6) they are "vague and ambiguous because Plaintiff does not specify what person, agency, state, country, etc. his is asking about." ECF No. 90 at 17–18.

The Court **DENIES** Plaintiff's Motion to Compel responses to Interrogatory Nos. 1 to 5. First, the amount of money allocated for urine testing is not relevant to Plaintiff's claim of retaliation. A viable claim of First Amendment retaliation in the prison context has five elements: (1) Plaintiff must allege that the retaliated-against conduct is protected;

(2) a state actor took adverse action against him; (3) the adverse action was taken because of Plaintiff's protected conduct; (4) the acts would chill or silence a person of ordinary firmness from future First Amendment activities; and (5) the retaliatory action did not advance legitimate goals of the correctional institution. Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005). The amount of money allocated for urine testing has no bearing on any of the five elements of retaliation as it would relate to Plaintiff's allegations of being bullied and harassed and having his administrative grievances screened out.

Nor are Interrogatory Nos. 1 to 5 relevant to Plaintiff's claim that urinalysis procedures interfered with his religious belief against giving away his bodily fluids or DNA. "The protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith." Young v. Biter, No. 1:14-CV-01942-BAM, 2015 WL 3604158, at *6 (E.D. Cal. June 8, 2015) (citing Shakur v. Schriro, 514 F.3d 878, 884–85 (9th Cir. 2008)). Relatedly, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The amount of money allocated for urine testing has nothing to do with allegations that prison officials substantially burdened the practice of Plaintiff's religion. ECF No. 90-1 at 18–19 (Plaintiff's Interrogatories, attached as Exhibit 1 to the Motion).

**B.  Interrogatory Nos. 6 to 12**

Plaintiff's Interrogatory Nos. 6 to 12 generally request information about CDCR's urinary testing procedures. Specifically:

- Interrogatory No. 6 asks: "What is the minimum amount of urine needed for testing?"

- Interrogatory No. 7 asks: "What is the maximum amount taken from prisoner(s) for testing?"
- Interrogatory No. 8 asks: "What laboratory(s) does CDCR use for urine testing?"
- Interrogatory No. 8 (*sic*)[2] asks: "How much money does the laboratory(s) charge per test?"
- Interrogatory No. 9[3] asks: "What happens to any excess urine that is not tested?"
- Interrogatory No. 10[4] asks: "What are the procedure(s) for collecting urine sample(s)?"
- Interrogatory No. 11[5] asks: "Where is the urine stored before transporting to laboratory(s)?"
- Interrogatory No. 12[6] asks: "How many negative test[s] does it take for a prisoner to be removed from random test list?"

---

[2] Plaintiff numbered this interrogatory as "#8" (a second #8) in his initial set of interrogatories. ECF No. 90-1 at 4 (Plaintiff's Interrogatories, attached as Exhibit 1 to the Motion). However, Plaintiff refers to this interrogatory as "#9" in the Joint Motion. ECF No. 90 at 6. In this Order, the Court will refer to the Interrogatories by the number assigned by Plaintiff in his initial set of interrogatories.

[3] Plaintiff numbered this interrogatory as "#9" in his initial set of interrogatories but refers to this interrogatory as "#10" in the Joint Motion. ECF No. 90-1 at 4; see also ECF No. 90 at 6.

[4] Plaintiff numbered this interrogatory as "#10" in his initial set of interrogatories but refers to this interrogatory as "#11" in the Joint Motion. ECF No. 90-1 at 4; see also ECF No. 90 at 6.

[5] Plaintiff numbered this interrogatory as "#11" in his initial set of interrogatories but refers to this interrogatory as "#12" in the Joint Motion. ECF No. 90-1 at 4; see also ECF No. 90 at 6.

[6] Plaintiff numbered this interrogatory as "#12" in his initial set of interrogatories but refers to this interrogatory as "#13" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 6.

1  ECF No. 90-1 at 4–5.

2      For Interrogatory Nos. 6 to 12, Defendants identically objected as follows:

> Objection. Not relevant to any claim or defense, not proportional to the claims, and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Overbroad. Burdensome, oppressive, and harassing. Argumentative. Lacks foundation.

ECF No. 90-1 at 40–42.

    Plaintiff argues in support of his Motion to Compel Interrogatory Nos. 6 and 7 that he "h[as] a right to an answer [to these questions]." ECF No. 90 at 5. Plaintiff argues in support of his Motion to Compel both Interrogatory Nos. 8 (what laboratory CDCR uses for testing and how much money is charged per test) that "th[ese] question[s] [are] relative to the case." ECF No. 90 at 5–6. Plaintiff argues in support of his Motion to Compel Interrogatory No. 9 (what happens to any excess urine that is not tested), that "this is a crucial question that must be answered in full." Id. at 6.  Plaintiff argues in support of his Motion to Compel Interrogatory Nos. 10 (what are the procedures for collecting urine samples) and 11 (where is the urine stored before transporting to the laboratory) that "th[ese] question[s] [are] applicable to the case." ECF No. at 6.  Finally, Plaintiff argues in support of his Motion to Compel Interrogatory No. 12 (how many negative tests it takes for a prisoner to be removed from the random list) that "this question is applicable to the case." ECF No. 90 at 6.

    Defendants argue that the Motion to Compel Interrogatory Nos. 6 to 12 should be denied because (1) the information requested "has nothing to do with whether the prison's urinalysis procedures interfered with Plaintiff's religious belief against giving away his bodily fluids since his beliefs do not relate to the labs used or the costs;" (2) the information requested has nothing to do with retaliation; (3) "[t]he procedures currently (or in the past) used to collect urine samples and how the samples are currently (or in the past) stored have nothing to do with whether the prison's urinalysis procedures interfered with Plaintiff's

religious belief against giving away his bodily fluids since his beliefs relate to providing any at all, not with how it is collected or stored;" and (4) "the number of negative tests currently (or in the past) before a prisoner is removed from the random test list has nothing to do with whether the prison's urinalysis procedures interfered with Plaintiff's religious belief against giving away his bodily fluids since his beliefs prevent him from providing any urine, whether it would test positive or negative." ECF No. 90 at 20–22.

The Court **DENIES** Plaintiff's Motion to Compel responses to Interrogatory Nos. 6 to 12. First, the information requested in the interrogatories including: (1) the amount of urine taken from the prisoner for testing; (2) what lab is used for urine testing and the cost thereof; (3) what happens to any excess urine that is not tested; (4) where the urine is stored before it is transported to the lab; and (5) how many negative tests is takes for a prisoner to be removed from the random test list is not relevant to Plaintiff's claim of retaliation. As set forth above, a viable claim of First Amendment retaliation in the prison context has five elements: (1) Plaintiff must allege that the retaliated-against conduct is protected; (2) a state actor took adverse action against him; (3) the adverse action was taken because of Plaintiff's protected conduct; (4) the acts would chill or silence a person of ordinary firmness from future First Amendment activities; and (5) the retaliatory action did not advance legitimate goals of the correctional institution. Rhodes v. Robinson, 408 F.3d at 567–68. The information requested in Interrogatory Nos. 6 to 12 such as the amount of urine taken for testing and what happens to extra urine that is not tested has no bearing on any of the five elements of retaliation as it would relate to Plaintiff's allegations of being bullied and harassed and having his administrative grievances screened out.

Nor are Interrogatory Nos. 6 to 12 relevant to Plaintiff's claim that urinalysis procedures interfered with his religious belief against giving away his bodily fluids or DNA. As set forth above, "[t]he protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith." Young v. Biter, No. 1:14-CV-01942-BAM, 2015 WL 3604158, at *6. Similarly, RLUIPA

9

provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The information requested in Interrogatory Nos. 6 to 12 such as where the urine is stored before it is transported to the lab and how many negative tests it takes for a prisoner to be removed from the random test list has nothing to do with allegations that prison officials substantially burdened the practice of Plaintiff's religion. ECF No. 90-1 at 4–5 (Plaintiff's Interrogatories, attached as Exhibit 1 to the Motion).

## C. **Interrogatory No. 13**

Plaintiff's Interrogatory No. 13[7] asks: "Is there a difference in CCR Title 15 §3016, and §3290?" ECF No. 90-1 at 20. Defendants responded as follows: "Objection. Not relevant. Burdensome, oppressive, and harassing. Argumentative. Without waiving any objection, yes." ECF No. 90-1 at 43.

Plaintiff does not state a reason in the Joint Motion why a further response on Interrogatory No. 13 (whether there is a difference between CCR Title 15 §3016 and §3290) should be compelled. ECF No. 90 at 7. Defendants argue in the Joint Motion that "Defendant stands by the response since there is a difference in these two sections." Id. at 22. The Court finds that Defendants have adequately responded to Plaintiff's Interrogatory No. 13. Although Defendants objected to the Interrogatory, Defendants still answered "yes" that there is a difference in CCR Title 15 §3016 and §3290. Accordingly, Plaintiff's Motion to Compel a further response to Interrogatory No. 13 is **DENIED**.

---

[7] Plaintiff numbered this interrogatory as "#13" in his initial set of interrogatories but refers to this interrogatory as "#14" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 7.

D.  **Interrogatory Nos. 14 to 15**

Plaintiff's Interrogatory Nos. 14 to 15 ask:

- Interrogatory No. 14[8] asks: "What were the total allocation of funds for Calipatria State Prison for the fiscal year 2016?"
- Interrogatory No. 15[9] asks: "What was the total budget for CDCR for fiscal years 2014–2019?"

ECF No. 90-1 at 5.

For Interrogatory Nos. 14 to 15, Defendants identically objected as follows:

> Objection. Not relevant to any claim or defense, not proportional to the claims, and not proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Overbroad. Burdensome, oppressive, and harassing. Argumentative. Lacks foundation.

ECF No. 90-1 at 43. Plaintiff argues in support of his Motion to Compel Interrogatory Nos. 14 and 15 that these questions are "applicable to the case." ECF No. 90 at 7. Defendant argues in response that "[t]he funds for Calipatria and CDCR budget have nothing to do with whether the prison's urinalysis procedures interfered with Plaintiff's religious belief against giving away his bodily fluids since his beliefs relate to providing any urine at all, not with Calipatria's funds or CDCR's budget." Id. at 23. Defendant further argues that "this has nothing to do with retaliation." Id.

The Court **DENIES** Plaintiff's Motion to Compel responses to Interrogatory Nos. 14 and 15. First, the information requested in the interrogatories including: (1) the total

---

[8] Plaintiff numbered this interrogatory as "#14" in his initial set of interrogatories but refers to this interrogatory as "#15" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 7.

[9] Plaintiff numbered this interrogatory as "#15" in his initial set of interrogatories but refers to this interrogatory as "#16" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 7.

11

allocation of funds for Calipatria for fiscal year 2016; and (2) the budget for CDCR for fiscal years 2014 through 2019 is not relevant to Plaintiff's claim of retaliation. The information requested in Interrogatory Nos. 14 and 15 has no bearing on any of the five elements of retaliation as set forth in Rhodes v. Robinson, 408 F.3d at 567–68, as it would relate to Plaintiff's allegations of being bullied and harassed and having his administrative grievances screened out.

Nor are Interrogatory Nos. 14 and 15 relevant to Plaintiff's claim that urinalysis procedures interfered with his religious belief against giving away his bodily fluids or DNA. As set forth above, "[t]he protections of the Free Exercise Clause are triggered when prison officials substantially burden the practice of an inmate's religion by preventing him from engaging in conduct which he sincerely believes is consistent with his faith." Young v. Biter, No. 1:14-CV-01942-BAM, 2015 WL 3604158, at *6. Similarly, RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government shows that the burden is "in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc–1(a). The information requested in Interrogatory Nos. 14 and 15 has nothing to do with allegations that prison officials substantially burdened the practice of Plaintiff's religion. ECF No. 90-1 at 4–5 (Plaintiff's Interrogatories, attached as Exhibit 1 to the Motion).

### E.  Interrogatory No. 16

Plaintiff's Interrogatory No. 16[10] requests: "List differences in CCR Title 15 § 3016, 3290." ECF No. 90-1 at 5. Defendants responded as follows:

---

[10] Plaintiff numbered this interrogatory as "#16" in his initial set of interrogatories but refers to this interrogatory as "#17" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 7.

> Objection. Not relevant. Burdensome, oppressive, and harassing. Argumentative. Without waiving any objection, this responding party exercises the option to produce the records in that the answer to the interrogatory may be determined by examining California Code of Regulations, tit. 15, section 3016 (2020) (which is attached as Exhibit 1, and incorporated into this response by reference), and California Code of Regulations, tit. 15, section 3290 (2020) (which is attached as Exhibit 2, and incorporated into this response by reference).

ECF No. 90-1 at 43–44. Plaintiff does not state a reason in the Joint Motion why a further response on Interrogatory No. 16 (the differences between CCR Title 15 § 3016 and § 3290) should be compelled. ECF No. 90 at 7. Defendants argue in the Joint Motion that "Defendant stands by the response since any differences can be ascertained from the two sections that were produced." Id. at 23. The Court finds that Defendants have adequately responded to Plaintiff's Interrogatory No. 16. Although Defendants objected to the Interrogatory, Defendants still answered by incorporating by reference into the response the Code sections of the two Regulations at issue, 15 CCR §§ 3016 and 3290. ECF No. 90-1 at 43. Defendants also produced the two Code sections by attaching them as Exhibits 1 and 2 to Defendants' Responses. Id. at 47–53. Accordingly, Plaintiff's Motion to Compel a further response to Interrogatory No. 16 is **DENIED**.

F. **Interrogatory No. 17**

Plaintiff's Interrogatory No. 17[11] asks: "Was Prisoner Riley C60512 on the computer-generated list for random urine analysis on 10-21-14?" ECF No. 90-1 at 5. Defendants responded as follows:

> In late 2014, CDCR started a program of testing inmates for alcohol and controlled substances whereby 20% of inmates were randomly selected by the computer to be urine tested at each prison. Rules Violation Report Log No. 10-14-068, dated October 21, 2014, indicates that on October 21, 2014, Correctional Officer Witte was conducting the Random Drug Testing for your

---

[11] Plaintiff numbered this interrogatory as "#17" in his initial set of interrogatories but refers to this interrogatory as "#18" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 7.

13

> facility, and that you were notified more than three hours ahead of time that you would be required to provide a urine sample for testing for the presence of a controlled substance. When Officer Witte ordered you to submit a urine sample, you stated, 'I can't piss.' A copy of Rules Violation Report Log No. 10-14-068, dated October 21, 2014, is attached as Exhibit 3, and incorporated into this response by reference.

Id. at 44.

Plaintiff argues in the Joint Motion that "this question has a yes or no answer [and that] Defendant purposely evaded the question." ECF No. 90 at 7–8. Defendants argue that they "stand[] by the response since it indicates that in 2014 CDCR started a program of testing 20% of inmates who were randomly selected by a computer, and that on October 21, 2014, an officer was conducting this Random Drug Testing and that Plaintiff was notified that he would be required to provide a urine sample." Id. at 24. Defendants further state that they "also produced the October 21, 2014 Rules Violation Report that supported the response." Id.

The Court finds that Defendants have not provided a clear and unequivocal response to Interrogatory No. 17. The Court acknowledges that Defendants' response provides details regarding CDCR's program of random drug testing of inmates and also incorporates by reference the Rules Violation Report dated October 21, 2014 in support of its response. ECF No. 90-1 at 44. However, Defendants have failed to answer the specific question of whether Plaintiff was on the computer-generated list for random urine analysis on October 21, 2014. There is no indication that Defendants do not have the information necessary to provide a complete response to Interrogatory No. 17. Accordingly, Plaintiff's Motion to Compel a further response to Interrogatory No. 17 is **GRANTED**. Defendants are **ORDERED** to supplement or amend its response to Interrogatory No. 17 on or before **February 26, 2021**.

///
///
///
///

### G. **Interrogatory No. 18**

Plaintiff's Interrogatory No. 18[12] asks: "Does the Secretary of CDCR have directive(s) for urine testing? If so, what are they?" ECF No. 90-1 at 5. Defendants responded as follows:

> Objection. Not relevant as to time. Without waiving any objection, the current directives regarding urine testing are set forth in California Code of Regulations, tit. 15, section 3290. This responding party exercises the option to produce a record in that the answer to the interrogatory may be determined by examining California Code of Regulations, tit. 15, section 3290 (2020), which is attached as Exhibit 2, and incorporated into this response by reference.

ECF No. 90-1 at 44–45.  Plaintiff does not state a reason in the Joint Motion why a further response on Interrogatory No. 18 (whether the CDCR has a directive for urine testing) should be compelled. ECF No. 90 at 8. Defendants argue that they "stand by the response since Defendant provided the directives regarding urine testing." Id. at 25.  The Court finds that Defendants have adequately responded to Plaintiff's Interrogatory No. 18. Although Defendants objected to the Interrogatory, Defendants still responded by directing Plaintiff to the applicable Code of Regulations section, 15 CCR § 3290. ECF No. 90-1 at 43. Defendants also attach the Code of Regulations section as Exhibit 2 to Defendants' Responses. Id. at 47–53. Accordingly, Plaintiff's Motion to Compel a further response to Interrogatory No. 18 is **DENIED**.

### H. **Subpoenas**

Plaintiff states in his section of the Joint Motion that on December 29, 2020 he mailed Defendant's counsel ten subpoenas. ECF No. 90 at 5. The subpoenas are attached to the Joint Motion as Exhibit 2, and nine of the subpoenas are directed to Defendant Kernan and one of the subpoenas is directed to Norah O'Donnell. See Exhibit 2 to the Joint

---

[12] Plaintiff numbered this interrogatory as "#18" in his initial set of interrogatories but refers to this interrogatory as "#19" in the Joint Motion. ECF No. 90-1 at 5; see also ECF No. 90 at 8.

15

Motion at 90-2. Plaintiff states that Defendant's counsel objected to the subpoenas as to "timeliness." Id. Plaintiff further states that he "agrees that the return date of 1-12-21 was not sufficient for proper response." Id. In their Response, Defendants argue that "Plaintiff concedes that the return date of January 12, 2021 'was not sufficient for proper response,' [and] [t]hus, responses to the subpoenas should not be compelled." ECF No. 90 at 25.

The Court finds that there does not appear to be a dispute as to the subpoenas in light of Plaintiff's concession that the response date was not sufficient. Accordingly, Plaintiff's Motion to Compel responses to the subpoenas is **DENIED**.

## CONCLUSION

Plaintiff's Motion to Compel further responses to Interrogatory Nos. 1 to 16 and 18 is **DENIED**. Plaintiff's Motion to Compel a further response to Interrogatory No. 17 is **GRANTED**. Defendants are **ORDERED** to amend or supplement the response to Interrogatory No. 17 on or before **February 26, 2021**. Plaintiff's Motion to Compel responses to the ten subpoenas, nine of which were served on Defendant Kernan and one to Norah O'Donnell, is **DENIED**.

**IT IS SO ORDERED.**

Dated: February 19, 2021

Honorable Linda Lopez
United States Magistrate Judge